IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| DUSTIN LEE STAGGERS, | Case No. 3:23-cv-00083-SMR-SBJ |
| Petitioner, | |
| v. | ORDER ADOPTING REPORT AND RECOMMENDATION |
| TORI ANN TIMMERMAN, | |
| Respondent. | |

Before the Court is a Report and Recommendation by United States Magistrate Chief Judge Stephen B. Jackson filed on June 27, 2024, pertaining to an Amended Petition for the Return of a Child to Mexico and Issuance of a Show Cause Order filed by Petitioner Dustin Lee Staggers. [ECF No. 5]. For the reasons stated below, the Court ACCEPTS and ADOPTS the Report and Recommendation. The Amended Petition is DENIED. [ECF No. 5].

I.  BACKGROUND

*A.  Factual Background[1]*

Petitioner Dustin Lee Staggers and Respondent Tori Ann Timmerman began a relationship in 2015 while living in South Carolina. In 2017, they became parents to E.L.S. the child subject to the present dispute. From 2015 to 2022, the parties and E.L.S. lived in South Carolina, Georgia, Iowa, Louisiana, and Florida three separate times. In March 2023, they relocated to Mexico City and entered into a three-year residential lease. The parties' relationship was tumultuous, fraught with verbal conflict, substance use, and domestic violence. In November 2023, Timmerman took

---

[1] This factual background is drawn from the trial record and the findings of fact in the Report and Recommendation. [ECF Nos. 47, 51, 52].

1

E.L.S. without Staggers's knowledge and returned to the United States, relocating to live with her parents in Iowa. The day after they arrived in Iowa, Timmerman sought a protective order against Staggers for domestic abuse. An Iowa state court issued a final protective order by consent agreement for domestic abuse restricting Staggers's access to Timmerman and E.L.S. until November 2024. The order dictated that E.L.S. was to remain in Iowa until otherwise ordered by a court. E.L.S. and Timmerman have lived in Iowa since 2023.

While she lived in Mexico, E.L.S. attended school, participated in social activities, and began to learn Spanish. Staggers continued to work, maintain his financial accounts, and pay taxes in the United States, travelling back frequently for work. Timmerman does not speak Spanish, only paid taxes in the United States, and maintained no financial accounts in Mexico. All three individuals are United States citizens and lived in Mexico pursuant to a one-year temporary visa. The parties stipulate that both the United States and Mexico are signatories to the Hague Convention and that Staggers was exercising rights of custody under Mexican law when E.L.S. was removed to the United States.

### B.  Procedural Background

Staggers filed his original petition on November 28, 2023, before filing an amended petition on November 29, 2023. In his petition, Staggers alleges that Timmerman wrongfully removed E.L.S. from Mexico. He seeks return of E.L.S. from the United States under the Hague Convention, as implemented through the International Child Abduction Remedies Act ("ICARA").42 U.S.C. § 9001 *et seq.* Timmerman denies that E.L.S. was wrongfully removed because the child's habitual residence is the United States, not Mexico. Timmerman also asserts two affirmative defenses: (1) Staggers acquiesced to the removal or retention of E.L.S. from

Mexico to the United States; and (2) returning E.L.S. to Mexico would present a grave risk to her safety. [ECF No. 20].

Chief Judge Jackson held a bench trial beginning on March 11, 2024 where he received substantial evidence and testimony from several witnesses on the issues of habitual residence, acquiescence, and grave risk. After considering all the evidence, Chief Judge Jackson recommended in a comprehensive order that the Court deny Staggers's petition for removal. [ECF No. 47]. Timmerman promptly filed a statement of intent to accept Chief Judge Jackson's Report and Recommendation. [ECF No. 48]. Staggers filed timely objections to the same.[2] [ECF Nos. 53].

## II. ANALYSIS

### A. Hague Convention Standards

"The Hague Convention 'was adopted in 1980 in response to the problem of international child abductions during domestic disputes.'" *Golan v. Saada*, 596 U.S. 666, 670 (2022) (quoting *Abbott v. Abbott*, 560 U.S. 1, 8 (2010)). The United States of America and Mexico are both signatories to the Convention. *Vasquez v. Colores*, 648 F.3d 648, 649 (8th Cir. 2011); *see also* Hague Convention on the Civil Aspects of International Child Abduction, art. 1(a), (b). The Hague Convention's goals are twofold: 1) "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and 2) "to ensure that rights of custody and of access under the law of one Contracting state are effectively respected in the other Contracting States." Hague Convention on the Civil Aspects of International Child Abduction, art. 1(a), (b). The United States

---

[2] The Court notes that Staggers lodged extensive objections criticizing Chief Judge Jackson and his findings in the report. These complaints were made hastily, as evidenced by the numerous writing errors, and with an unprofessional tone. The Court has reviewed the proceedings *de novo* and finds the recommendation prepared by Chief Judge Jackson to be thorough, well-reasoned, and fully supported by the record.

Senate ratified the Convention in October 1986 and thereafter enacted ICARA to effectuate the treaty domestically. *See* 22 U.S.C. §§ 9001–9010.

The treaty and enacting statutes created a four-part merits test. First, a court must determine whether the countries in the dispute, *i.e.*, from where the child was taken and to where they were taken, are signatories. *Abbott*, 560 U.S. at 9. Second, the court must determine the child's habitual residence at the time of the abduction, which determines the applicable law. *Monasky v. Taglieri*, 589 U.S. 68, 77 (2020) (citation omitted). Third, the court asks whether the person who took the child violated a "right of custody" as defined by the law of the country of the child's habitual residence. *Chafin v. Chafin,* 568 U.S. 165, 168 (2013) (citation omitted). If so, a court must order the return of the child to the country of habitual residence unless one of the enumerated exceptions is proven. *See* Hague Convention on the Civil Aspects of International Abduction, arts. 12–13; *see also* 22 U.S.C. § 9003. Staggers, as the petitioner, bears the burden of proving by a preponderance of the evidence that E.L.S. was wrongfully removed or retained. 22 U.S.C. § 9003(e)(1)(A).

There are four exceptions to the requirement that a child must promptly be returned to the child's country of habitual residence. Hague Convention on the Civil Aspects of International Abduction, art. 12–13. Relevant here are the exceptions of acquiescence and grave risk. Courts are not bound to return a child if the challenging party "consented or subsequently acquiesced in the removal or retention" of the child or if "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." *Id.* at art. 13(a)–(b). Timmerman, as respondent asserting these defenses, bears the burden of proving acquiescence by a preponderance of the evidence; and grave risk by clear and convincing evidence. *Leonard v. Lentz*, 297 F. Supp. 3d 874, 890 (N.D. Iowa 2017). A court need not order

the return of a child if an exception exists but may use its discretion "to return a child, despite the existence of a defense, if return would further the aims of the Convention." *Leonard v. Lentz*, 297 F. Supp. 3d 874, 890 (N.D. Iowa 2017) (quoting *Friedrich v. Friedrich*, 78 F.3d 1060, 1067 (6th Cir. 1996)).

### B. Habitual Residence

"Determining habitual residence is a mixed question of fact and law." *Tsuruta v. Tsuruta*, 76 F.4th 1107, 1111 (8th Cir. 2023). Once the district court determines the totality-of-the-circumstances legal standard applies, it becomes a "fact-driven inquiry" requiring a court consider more than "domicile and nationality." *Monasky*, 589 U.S. at 78, 84. The relevant factors include the place the child considers home, the length of time a child has resided in the location, the degree of the child's integration, and the intention of the caregivers on where the family will reside. *Id*. at 77–78. In making this determination, "courts must be sensitive to the unique circumstances of the case and informed by common sense." *Id*. at 78. (citation omitted).

Upon a thorough and comprehensive review of the evidence and arguments in this case, Chief Judge Jackson found that E.L.S.'s habitual residence was the United States, not Mexico. The Court agrees with this determination. A child's habitual residence is the place the child is "at home" at the time of removal. *Monasky*, 589 U.S. at 76–77. While living in Mexico, E.L.S. was in the process of learning Spanish, exploring Mexican culture, and building relationships. Yet, given the limited time that she was in Mexico; her young age; and the substantial environmental hurdles she faced in adapting to a new country, E.L.S. had not fully acclimated to life there at the time of removal.

First, E.L.S. and her family were fluent in English, not Spanish. Second, her entire extended family was located in the United States. Third, she had only lived in Mexico for

approximately nine months in contrast to approximately five years in the United States. Meanwhile, the parties had already (1) moved seven times during E.L.S.'s six years of life; (2) maintained their businesses and the family's finances in the United States, with neither party working in Mexico; and (3) frequently traveled to the United States for work or to visit family. Considering E.L.S.'s perspective in light of the behavior of Timmerman and Staggers, it is clear that E.L.S. was not "at home" in Mexico. Under the totality of the circumstances, E.L.S.'s habitual residence at the time of removal was the United States where she had spent the majority of her life. Habitual residence lies at the heart of the ICARA analysis because the law serves to protect children who were *wrongfully* removed. See *Tsuruta*, 76 F.4th at 1110 (emphasis added). Accordingly, this finding is sufficient and dispositive to determine the issue on its own— E.L.S. cannot be returned to Mexico under the Hague Convention. For the sake of completeness, the Court will briefly discuss the exceptions raised by Timmerman.

## C. Acquiescence

Timmerman asserts the defense of acquiescence, arguing that Staggers consented to the retention of E.L.S. in the United States. Hague Convention on the Civil Aspects of International Abduction at art. 13(a). She cites to the consensual protective order that was issued in November 2023, after E.L.S. had been brought to Iowa. The order listed Timmerman as a protected party, but laid out restrictions and conditions on Staggers's parenting time with E.L.S. Specifically, one provision stated that "[t]he [p]arties' minor child shall remain in the State of Iowa pending further order from a court concerning the ongoing custody dispute." [ECF No. 54-7 at 89]. Chief Judge Jackson found in the Report and Recommendation that Staggers had acquiesced to the retention of E.L.S. in Iowa. [ECF No. 47]. Staggers argues that the protective order pertains only to his

relationship with Timmerman and there are no facts to indicate that he subjectively approved of E.L.S.'s removal.

It is significant that both parties were represented by counsel and negotiated in the state proceedings for the protective order. [ECF Nos. 51 at 138; 52 at 57]. They each agreed with, and consented to, the terms in the order. Staggers consented to an agreement that expressly provided that E.L.S. was to reside in Iowa until November 2024 when the order expires. Even so, the Court recognizes the concern with taking such protective orders entered into by agreement as a *per se* acquiescence to the wrongful removal or retention of a child. *See Antunez-Fernandes v. Connors-Fernandes*, 259 F. Supp. 2d 800, 814 (N.D. Iowa 2003). However, as determined above, E.L.S. was not wrongfully removed from her habitual residence. Therefore, the concern of discouraging cooperation and negotiations in such proceedings is not present in this case.

### D.  Grave Risk

Finally, Timmerman argues that E.L.S. should not be returned to Mexico because to do so would present a grave risk of physical or psychological harm, or otherwise place her in an intolerable situation. Hague Convention on the Civil Aspects of International Abduction at art. 13(b). A child should not be returned to a situation when there is a likelihood of "serious abuse or neglect" upon such return. *Vasquez v. Colores*, 648 F.3d 648, 650 (8th Cir. 2011) (citing *Silverman v. Silverman*, 338 F.3d 886, 900 (8th Cir. 2003)). The key inquiry is "the gravity of risk" facing the child. *Babcock v. Babcock*, 503 F. Supp. 3d 862, 882 (S.D. Iowa 2020) (quoting *Acosta v. Acosta*, 725 F.3d 868, 876 (8th Cir. 2013)). This analysis focuses on "the probability of harm, but also the magnitude of the harm if the probability materializes." *Id.* Considering the impact of domestic violence in the home on E.L.S., the Report and Recommendation supports a

finding of grave risk. Staggers argues that there are no grounds for such a finding because there is no evidence of him abusing E.L.S. directly.

The record in this case paints a disturbing picture of an unstable and violent relationship between the parties and as such, a volatile environment for E.L.S. The evidence shows that neither party is entirely innocent in contributing to that situation. Still, the physical abuse perpetrated by Staggers on Timmerman is extensive and supported by her testimony, numerable photographs depicting her injuries, and Staggers's own admissions. [ECF Nos. 52 at 22–24, 54-7 at 59–78; 51 at 62–63]. E.L.S. was not, nor could she have been, effectively shielded from the psychological and physical violence occurring between the parties. At a minimum, it is evident that returning E.L.S. to Mexico would subject her to an intolerable situation. The Court agrees with the finding in the Report and Recommendation. Even if the evidence did not establish direct physical abuse of E.L.S. by Staggers, the surrounding circumstances and magnitude of the potential harm constitute grave risk. Notwithstanding her habitual residence, the Hague Convention would not require E.L.S.'s return.

### III.    CONCLUSION

For the reasons stated above, the Court ACCEPTS and ADOPTS the Report and Recommendation. [ECF No. 47]. Staggers has not established that Mexico is E.L.S.'s habitual residence and that she was wrongfully removed. Furthermore, there is substantial evidence to support the defenses of acquiescence and grave risk such that return would be improper regardless. Staggers's Amended Verified Petition for Return of Child to Mexico is DENIED. [ECF No. 5].

IT IS SO ORDERED.

Dated this 27th day of August, 2024.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT